O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

KEXUAN YAO,

             Plaintiff,

      v.

CRISNIC FUND, S.A., et al.,

          Defendants.

CASE NO. SACV 10-1299 AG (JCGx)

ORDER DENYING MOTION TO
QUASH SERVICE, DENYING
MOTION FOR SERVICE BY
PUBLICATION, AND GRANTING
MOTION TO DISMISS

Plaintiff Kexuan Yao ("Plaintiff") filed a complaint ("Complaint") against Defendants
Crisnic Fund, S.A., Anthony Gentile (together, "Defendants"), and Ed Furman, who has not
appeared in this action so far.  The Complaint alleges several federal claims for violations of the
Securities Exchange Act, along with multiple state law claims.  Defendants now move to quash
service of the summons and complaint and dismiss the case ("Motion to Quash").  They also
move to dismiss for lack of jurisdiction and for failure to state a claim ("Motion to Dismiss").
Plaintiff recently filed a "Motion for Rulings on Pending Motions, Or, In the Alternative, For
Order Authorizing Alternative Means of Service Under Federal Rules of Civil Procedure 4(h)(2)
and 4(f)(3)."  Plaintiff provides no authority for filing a "Motion for Rulings on Pending

1   Motions," so the Court DENIES that portion of the motion.  The Court deems the remainder of

2   the recently-filed motion to be a "Motion for Service by Publication."  After considering all

3   papers and arguments submitted, the Court DENIES the Motion to Quash, DENIES the Motion

4   for Service by Publication and GRANTS the Motion to Dismiss with leave to amend.

5

6   **<u>BACKGROUND</u>**

7

8          The following facts come from the Complaint and admissible evidence.  Plaintiff is a

9   citizen of China and holds a business visa to work temporarily in the United States.  (Compl.

10   ¶ 1.)  Plaintiff is the Chief Executive Officer and a director of China Armco Metals ("China

11   Armco").  (*Id*.)  China Armco is a Nevada corporation.  (*Id*. ¶ 2.)  Defendant Crisnic is a Costa

12   Rican corporation with its principal place of business in San Jose, Costa Rica.  (Affidavit of

13   Anthony Gentile in Support of Reply to Motion to Dismiss ¶ 2.)  Defendant Gentile is the

14   founder and principal of Defendant Crisnic.  (Declaration of Anthony Gentile in Support of

15   Motion to Dismiss, ¶ 3.)  Defendant Crisnic has brokerage accounts in other parts of the world,

16   including the United Kingdom and the United States.  (*Id*. ¶ 3.)  Defendant Gentile moved to

17   Costa Rica in 2007.  (*Id*. ¶ 4.)  By 2009, Defendant Gentile resided in Costa Rica and intended to

18   stay there permanently.  (*Id*.)  Defendant Gentile states that he still "openly reside[s] and

19   spend[s] most of [his] time" at his home in Costa Rica.  (Affidavit of Anthony Gentile In

20   Support of Opposition to Motion for Service by Publication, ¶ 5.)

21          This case arises from a "Structured Transaction" between Crisnic and Plaintiff.  "Crisnic

22   . . . through its agent [Ed] Furman, offered to lend Yao $2.5 million if Yao would pledge 1.3

23   million of his China Armco unregistered shares as collateral for the loan."  (Compl. ¶ 12.)

24   Plaintiff's 1.3 million shares represented 9% of the total outstanding issued shares of China

25   Armco and had a then-current value of almost $5 million.  (*Id*.)  When held by Plaintiff, the

26   shares had legal restrictive legends on them.  (*Id*. ¶ 13, 15.)  The restrictive legends would have

27   limited the sale of the stock.  But Plaintiff transferred them to Defendant Crisnic's brokerage

28   account at Transcend Capital, LP free of any restrictions.  (*Id*. ¶ 13, 15.)  The transfer to

Defendant Crisnic allowed Defendant Crisnic to hold the China Armco shares as collateral for the promised loan.  The parties signed a Structured Transaction Agreement that governed the transfer of the shares from Plaintiff to Defendant Crisnic.  (Declaration of Stanley Morris in Opposition to Motion to Dismiss, Ex. 5.)  In the Structured Transaction Agreement, Plaintiff stated that the shares were freely transferrable.  (*Id*.)

Because of changes in the stock price soon after the transfer to Defendant Crisnic, Plaintiff became suspicious that Defendant Crisnic had begun selling Plaintiff's stock before providing the loan amount to Plaintiff.  (*Id*. ¶ 16.)  Defendant Crisnic then wired $1 million to Plaintiff's bank account as the loan, even though the loan was supposed to be for $2.5 million.  (*Id*. ¶ 18.)

Although Defendant Gentile lives in Costa Rica, he has some personal contacts with the state of Georgia and elsewhere in the United States.  He used to live in Roswell, Georgia, with his now-estranged wife, and his name remains on the mortgage.  (Affidavit of Anthony Gentile in Support of Reply to Motion to Dismiss ¶ 4.)  He comes back to the United States to visit his children, who live in Georgia.  (*Id*.)  Defendant Gentile has a valid Georgia drivers license, which expires in 2013.  (Declaration of Stanley Morris in Opposition to Motion to Quash, Ex. 8.)  In addition, Defendant Gentile has a former business, IFG Opportunity Fund ("IFG"), which is a Georgia corporation located in Irvine, California, but has not had any active business since 2008.  (Affidavit of Anthony Gentile in Support of Reply to Motion to Dismiss ¶ 6.)  Also, Defendant Gentile holds a U.S. passport and files income tax returns in the United States, although not in Georgia.  (*Id*. ¶ 5.)

**<u>ANALYSIS</u>**

As noted, Defendants filed two motions, and Plaintiff has filed a Motion for Service by Publication.  The Court first reviews Defendants' Motion to Quash.

**1.       MOTION TO QUASH**

Plaintiff has attempted to serve two defendants in this case, Defendant Crisnic and Defendant Gentile.  It appears from the record that Defendant Furman may not have been served, and Defendant Furman does not join in this Motion to Quash.  The federal rules for service are more complicated because Defendant Crisnic is a foreign citizen and Defendant Gentile, while a U.S. citizen, is a foreign resident.

Defendants move both to quash service and to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(5), which provides for dismissal for insufficient service of process. Defendants argue that Plaintiff's attempts at service did not satisfy the requirements of Rule 4(f), which provides for serving an individual in a foreign country.  Plaintiff presents multiple theories of service in his Opposition to the Motion to Quash.  When a defendant files a motion to dismiss challenging sufficiency of service of process, plaintiff bears the burden of proving adequacy of service.  *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367 (S.D.N.Y. 2006).  Thus, the Court considers whether Plaintiff has met this burden under any of the rules with which Plaintiff argues compliance.  Dismissal of a complaint for insufficiency of process is inappropriate when there is a reasonable prospect that service may be obtained.  In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service.  *Mitchell v. Theriault*, 516 F.Supp.2d 450 (M.D. Pa. 2007).

So, the Court now considers the various Federal Rules and other statutes Plaintiff relies on for demonstrating proper service of Defendants.  The Court turns first to Rule 4(e.)

**1.1       Fed.R.Civ.P. 4(e)**

Federal Rule of Civil Procedure 4(e) governs service of an individual within a judicial district of the United States.  "Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by [the following means]."  Fed.R.Civ.P. 4(e). But Plaintiff does not allege that either Defendant Crisnic or Defendant Gentile were *in the*

*United States.* Also, Plaintiff argues that, specifically, Rule 4(e)(3) applies, and quotes the supposed language of this section. But no such rule exists. Nor does the quote provided by Plaintiff exist in any part of Rule 4. Such perplexing citations have made a just and efficient review of Plaintiff's position difficult, to say the least. Plaintiff's argument based on Rule 4(e) fails.

### 1.2    Section 22 and Section 27 of the Securities Exchange Act

Section 22 of the Securities Exchange Act of 1933 and Section 27 of the Securities Exchange Act of 1934 provide for federal jurisdiction over violations of the securities laws. But neither section provides new rules for how service can be effected. Section 22 states that "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." Section 27 states the same thing.

Plaintiff seems to suggest that these sections allow for service of any type, unrestricted by the provisions of Rule 4. But Plaintiff acknowledges that Section 22 and Section 27 must be read in conjunction with Rule 4. Plaintiff states in his Opposition that "when read together with Rule 4 of the Federal Rules of Civil Procedure [these sections] permit[] service in a foreign country." (Opp'n to Motion to Quash at 10:13-14.) It is undisputed that service *may* be effected in a foreign country. But Plaintiff fails in his attempt to use Section 22 and Section 27 as a substitute for Rule 4's requirements.

Even assuming that Section 22 and Section 27 are relevant to this case, the Court still needs to consider whether service was proper under Rule 4. Accordingly, the Court rejects Plaintiff's arguments for service under Section 22 and Section 27 and turns now to Plaintiff's next argument for why his attempts at service were successful, based on Rule 4(k)(2).

### 1.3    Fed.R.Civ.P. 4(k)(2)

In his Opposition, Plaintiff argues that Rule 4(k)(2) applies. But this Rule addresses

1   jurisdiction only *after* effective service and does not provide alternative means of service.

2   Therefore, this Rule is inapplicable to the Motion to Quash.  The Court notes that Rule 4(k)(2)

3   applies only when "(A) the defendant is not subject to jurisdiction in any state's courts of general

4   jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and

5   laws." Fed.R.Civ.P. 4(k)(2).  After reviewing the evidence and arguments submitted, the Court

6   has concerns that Georgia courts may be able to exercise general jurisdiction over Defendant

7   Gentile, although perhaps not over Defendant Crisnic.  But because this jurisdictional question is

8   beyond the scope of the Motion to Quash, the Court need not resolve such issues at this time.

9   For now, the Court rejects Plaintiff's arguments that Rule 4(k)(2) applies to the issues raised in

10  this Motion to Quash, and moves on to Plaintiff's next argument, based on another provision of

11  Rule 4.

12

13      **1.4     Fed.R.Civ.P. 4(f)(1) and (2)**

14

15      Federal Rule of Civil Procedure 4(f) specifically applies to serving an individual "at a

16  place not within any judicial district of the United States." Fed.R.Civ.P. 4(f).  Because

17  Defendant Gentile was not in the United States when service was attempted, this is the Federal

18  Rule that applies to him.  And because Defendant Crisnic is a corporation, not an individual, this

19  rule does not apply.  For Defendant Crisnic, in Section 1.5 the Court will assess service under

20  Rule 4(h).  The Court will also later look to Rule 4(f)(3), which allows Court-ordered service.

21      Rule 4(f) sets forth several ways in which an individual can be served in a foreign

22  country.  First, under Rule 4(f)(1), "by any internationally agreed means of service that is

23  reasonably calculated to give notice, such as those authorized by the Hague Convention on the

24  Service Abroad of Judicial and Extrajudicial Documents."  But Costa Rica is not a party to that

25  Hague Convention.  *See* Hague Conference on Private International Law, Hague Service

26  Convention, Status Table, available at

27  http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited August 24,

28  2011).  Because Costa Rica is not a member to that Hague Convention, Rule 4(f)(1) is

1    inapplicable.  Plaintiff does not identify other internationally agreed means.

2        So the Court looks to the next subsection of Rule 4(f).  Rule 4(f)(2) allows for service in

3    the following ways:

4

5        (2) if there is no internationally agreed means, or if an international agreement allows but

6            does not specify other means, by a method that is reasonably calculated to give notice:

7            (A) as prescribed by the foreign country's law for service in that country in an

8                action in its courts of general jurisdiction;

9            (B) as the foreign authority directs in response to a letter rogatory or letter of

10               request; or

11           (C) unless prohibited by the foreign country's law, by:

12                   (i) delivering a copy of the summons and of the complaint to the individual

13                       personally; or

14                   (ii) using any form of mail that the clerk addresses and sends to the

15                       individual and that requires a signed receipt;

16

17       Neither party addresses the Costa Rican laws for service, nor does Plaintiff allege that he

18   tried to serve a letter rogatory or a letter of request.  But neither party argues that Costa Rican

19   law prohibits service by personal delivery or by a form of mail that requires a signed receipt.

20   Thus, the Court considers whether Plaintiff has shown service of Defendant Gentile under either

21   provision of Rule 4(f)(2)(C).  As stated above, Rule 4(f)(2)(C) allows for service either by

22   delivery of the summons and complaint personally to the defendant, or by using any form of

23   mail sent to the individual that requires a signed receipt.

24

25       *1.4.1   Personal Service of Defendant Gentile*

26

27       In his declaration supporting the Opposition to the Motion to Quash, Plaintiff's counsel

28   recites several attempts at service.  The Court now reviews those stated attempts at personal

1  service of Defendant Gentile, then the Court assesses whether any of those attempts were

2  compliant with Rule 4(f).

3        First, Plaintiff's counsel alleges that he emailed Defendant Gentile with a link to

4  counsel's server where Defendant Gentile could download the summons and complaint.

5  (Declaration of Stanley Morris in Opposition to Motion to Quash ("Stanley Quash Decl."), ¶ 3,

6  Ex. 1.)

7        Second, Plaintiff's counsel asserts that Cody Gear, a private investigator, visited the

8  offices of Defendant Gentile.  (*Id*. ¶ 11.)  Gear attested under oath that Gavridge Perez Porras,

9  who identified himself as the attorney for Defendant Gentile, agreed to accept service of the

10  summons and complaint on behalf of Defendants.  (*Id*. ¶ 11, Ex. 7.)

11        Finally, Plaintiff argues in the Opposition to the Motion to Quash that he served a copy of

12  the summons and complaint on Richard Cutler, counsel for Defendants.

13        But none of these attempts constitute satisfactory personal service of Defendant Gentile

14  himself, as required by Rule 4(f)(2)(C)(i).

15        Regarding the first attempt, Plaintiff cites no authority that emailing a link to copies of a

16  summons and complaint is sufficient service.  Plaintiff cites one case, *Rio Properties, Inc. v. Rio*

17  *Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002), in which the court ordered service by email.

18  But that case involved a whole different section of Rule 4.  Under Rule 4(f)(3), which allows

19  service "by other means not prohibited by international agreement, as the court orders," the *Rio*

20  court ordered service by email.  But that section of the Federal Rules is not the section relevant

21  here.  The Court is unaware of any authority supporting the proposition that an emailed copy of a

22  summons would be proper personal service.

23        Regarding the second attempt, the attempted service on Porras was not sufficient.  Rule

24  4(f)(2)(C)(i) provides specifically for *personal* service, not substitute service.  The section of

25  Rule 4 that governs service of individuals within the United States has a specific provision for

26  service to an agent authorized to receive service of process.  Fed.R.Civ.P. 4(e)(2)(C).  Because

27  Rule 4(f) does not include such a provision for service of an agent, a plain reading of the Federal

28  Rules compels the conclusion that the limitation to personal service was intentional for

1    individuals in a foreign country.  Further, Porras submitted a declaration that he "cannot accept

2    service of any legal documents on behalf of Anthony Gentile, and was not served [on] his behalf

3    with any documents related to this case on September 14, 2010 or any other date."  (Affidavit of

4    Gavridge Perez Porras in Support of Motion to Quash, ¶ 2.)  Thus, there is conflicting evidence

5    before the Court on whether service was even made on Porras.  But the Court need not consider

6    the conflicting evidence because Rule 4(f)(2)(C)(i) allows only for personal, not substituted,

7    service.

8          Finally, regarding the third attempt, Plaintiff submits only arguments without any

9    evidence.  In support of the argument about service on Richard Cutler, Plaintiff cites paragraph 5

10   of the Stanley Quash Declaration.  But paragraph 5 says nothing about Richard Cutler, nor does

11   any other paragraph of the Stanley Quash Declaration mention Cutler.  Again, another

12   perplexing citation. The Court has no evidence that Plaintiff tried to serve Cutler as a means of

13   serving Defendant Gentile.

14         Thus, the Court finds that Plaintiff has failed to show service of Defendant Gentile by

15   personal service under Rule 4(f)(2)(C)(i).  The Court next considers whether Plaintiff has shown

16   service by mail and a signed receipt, under Rule 4(f)(2)(C)(ii).

17

18         *1.4.2   Service by Mail of Defendant Gentile*

19

20         Plaintiff's counsel asserts that he sent a copy of the summons and complaint to Defendant

21   Crisnic's office via Federal Express (Stanley Quash Decl., ¶ 9, Ex. 5.), and that he sent a copy

22   via United States Postal Service, First Class, Return Receipt (*Id.*, ¶ 10, Ex. 6.)

23         But for this service to be effective, Plaintiff needs to submit proof.  Rule 4(l)(2),

24   governing proof of service outside the United States, requires "if made under Rule 4(f)(2) or

25   (f)(3) . . . a receipt signed by the addressee, or by other evidence satisfying the court that the

26   summons and complaint were delivered to the addressee."

27         Plaintiff submits insufficient proof.  For the Federal Express delivery, Plaintiff submits a

28   copy of a receipt signed by someone apparently named Katherine Cruz.  (Stanley Quash Decl.,

Ex. 5.)  But this is neither a receipt signed by Defendant Gentile, nor evidence to satisfy this Court that the summons and complaint were delivered to Defendant Gentile.  There is no evidence that Ms. Cruz passed along the delivery to Defendant Gentile.  And for the Postal Service delivery, Plaintiff submits a copy of his own part of the Receipt for Registered Mail. (Id., Ex. 6.)  This shows nothing other than that Plaintiff's counsel tried to send a delivery to Defendants.  There is no evidence of a receipt returned by Defendant Gentile.

Thus, the Court further finds that Plaintiff has failed to show service of Defendant Gentile by mail with a signed receipt, under Rule 4(f)(2)(C)(ii).

### 1.4.3   Conclusion

Plaintiff has not satisfied his burden of showing service of Defendant Gentile under Rule 4(f)(1) or Rule 4(f)(2).

## 1.5     Fed.R.Civ.P. 4(h)

The parties do not address Rule 4(h), but this is the rule that governs service of foreign corporations, such as Defendant Crisnic.  That rule states:

Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and — if the agent is one authorized by statute and the statute so requires — by also mailing a copy of each to

the defendant; or

(2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

The Court first considers whether Plaintiff has shown attempted service of Defendant Crisnic *in the United States* as required for Rule 4(h)(1) to apply. Plaintiff's counsel alleges service of one person in the United States, namely John Diehl. (Stanley Quash Decl. ¶ 6, Ex. 3.) Diehl was listed on Defendant Crisnic's website as a consultant. (*Id.*) Plaintiff submitted a proof of service for substitute service on Diehl. (*Id.*, Ex. 3.) But wait, another perplexing piece of evidence. The proof of service lists only one defendant, and the defendant listed is Defendant Gentile. Even if Plaintiff could show that substitute service on Diehl could be effective as service on Defendant Crisnic – which the Court highly doubts – the proof of service itself supplies no connection between Diehl and Defendant Crisnic. Thus, the Court finds that Rule 4(h)(1) is not applicable here.

The Court turns, then, to Rule 4(h)(2). This provision refers back to Rule 4(f). Here, the only provision of Rule 4(f) that could apply is Rule 4(f)(2)(C)(ii), discussed in Section 1.4.2, which allows for service by mail with a signed receipt.

Plaintiff submits no evidence of mailed service to Defendant Crisnic other than the mailed service to Defendant Gentile, which the Court already discussed. The evidence of service by United States Postal Service is insufficient because Plaintiff has submitted no evidence of a signed receipt. But the Court needs to consider whether the Federal Express delivery, signed by Cruz, is sufficient in a corporate context.

Rule 4(f)(2)(C)(ii), as incorporated by Rule 4(h)(2), does not list who can sign for a corporation. But other sections of Rule 4 consistently list who can accept service for a corporation. Rule 4(d) lists "an officer, a managing or general agent, or any other agent authorized by appointment of by law to receive service of process." *See West of England Ship Owners Mut. Ins. Assn. v. McAllister Brothers, Inc.*, 829 F.Supp. 122, 123 (E.D. Pa. 1993)

1   ("Service upon a corporation may be made upon an officer, a managing or general agent or any
2   other agent authorized by appointment or by law to receive service of process.").  And Rule
3   4(h)(1)(B) also lists "an officer, a managing or general agent, or any other agent authorized by
4   appointment or by law to receive service of process."  Courts have found that Rule 4(h)(2)
5   allows for service of a corporation through service of its officers, managers, or authorized
6   agents.  *See, e.g., Dyer v. Wal-Mart Stores, Inc*., 318 Fed.Appx. 843, 844 (11th Cir. 2009).

7          For purposes of this analysis, the Court assumes that Rule 4(h)(2) allows for service on a
8   corporation through an officer or agent.  But Plaintiff has submitted no evidence that Cruz is an
9   officer, managing agent, general agent, or otherwise authorized agent of Defendant Crisnic.
10  Therefore, the Court concludes that Plaintiff has not satisfied service of Defendant Crisnic under
11  Rule 4(h)(2) or any other provision of Rule 4(h).

12

13          **1.6      Request for Court Ordered Service under Fed.R.Civ.P. 4(f)(3)**

14

15          Plaintiff asks, in his Opposition to the Motion to Quash, for the Court to order service by
16  other means under its authority through Rule 4(f)(3).  The Ninth Circuit held in *Rio Properties*
17  that "Rule 4(f)(3) is an equal means of effecting service of process under the Federal Rules of
18  Civil Procedure, and we commit to the sound discretion of the district court the task of
19  determining when the particularities and necessities of a given case require alternate service of
20  process under Rule 4(f)(3)."  *Rio Properties*, 284 F.3d at 1016.  In ordering service under Rule
21  4(f)(3), "trial courts have authorized a wide variety of alternative methods of service including
22  publication, ordinary mail, mail to the defendant's last known address, delivery to the
23  defendant's attorney, telex, and most recently, email."  *Id.*
24          At a hearing, the Court deemed this request to be a separate motion and allowed
25  Defendants to file an opposition with a subsequent reply permitted from Plaintiff.  The parties
26  submitted these supplemental papers and the Court has reviewed them.  At this time, because the
27  Court permits defective service, the Court finds it unnecessary to rule on the request for service
28  by email.

1    **1.7     Whether to Permit Defective Service**

2

3    From the preceding analysis, the Court concludes that Plaintiff has not successfully

4    served either Defendant Crisnic or Defendant Gentile.  The Court has also reviewed the evidence

5    recently submitted with the Motion for Service by Publication and it does not change the

6    preceding analysis.  Although Plaintiff has continued his efforts, he has still failed to properly

7    serve either Defendant Crisnic or Defendant Gentile.  Even so, the Court may permit defective

8    service.  The Ninth Circuit applies a flexible approach to determine whether to permit the

9    defective service to stand. In *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984), the Ninth

10   Circuit adopted a rule permitting courts to overlook a non-compliant service of process provided

11   that (1) the party to be served received actual notice, (2) the defendant would not be prejudiced

12   by the defect in service, (3) there was a justifiable excuse for the failure to properly serve, and

13   (4) the plaintiff would be severely prejudiced if the complaint were dismissed.  *Id.*

14   Perplexingly, the parties do not address this in their papers.  Based on the evidence

15   submitted, it is clear that Defendants have actual notice of the summons and complaint.  It is

16   unlikely that Defendants would be prejudiced by the Court permitting defective service, as

17   Defendants are clearly aware of this case and have filed documents quite recently.  Further, the

18   Court could order service by email under Rule 4(f)(3) and under *Rio Properties*, 284 F.3d at

19   1016, in which case service would no longer be defective.  But instead of going through that

20   process, the Court finds it more expedient to deem Plaintiff's numerous and varied attempts at

21   service to be good enough.  Plaintiff has provided a minimally justifiable excuse for failure to

22   properly serve, since Defendant Gentile and Defendant Crisnic are both located overseas in

23   Costa Rica.  Finally, the Court finds that, while Plaintiff's complaint is dismissed on other

24   grounds, Plaintiff would be prejudiced by dismissal for improper service.  As noted previously,

25   the Court should only dismiss the complaint for failure of service when there is no reasonable

26   prospect that service may be completed.  *Mitchell*, 516 F. Supp. 2d at 457.  It appears that

27   Plaintiff could serve Defendants successfully.

28   Thus, the Court DENIES the Motion to Quash.

**2.      MOTION FOR SERVICE BY PUBLICATION**

Plaintiff has recently filed a Motion for Service by Publication.  Since the Court permits Plaintiff's defective service, the Court need not rule on the merits – or the procedural propriety – of this Motion.  The Motion for Service by Publication is not necessary and is therefore DENIED.

**3.      MOTION TO DISMISS**

Defendants move to dismiss the Complaint under Rule 12(b)(1), 12(b)(2), and 12(b)(6).

**3.1      Preliminary Matter**

Plaintiff asks the Court to take judicial notice of eleven documents attached to the Declaration of Stanley Morris in Support of the Opposition to the Motion to Dismiss.  Defendants object to this request for judicial notice.  Defendants asks the court to take judicial notice of several SEC filings by China Armco.  Plaintiff does not object.

Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Facts subject to judicial notice may be considered on a motion to dismiss.  *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

The Court GRANTS the requests for judicial notice from Defendants.  The Court DENIES the request from Plaintiff.  The documents submitted by Plaintiff can be considered without taking judicial notice because they were attached to a declaration.  Further, it is unclear from the papers submitted whether Plaintiff asks the Court to take judicial notice of all facts asserted within all eleven documents, or whether Plaintiff simply wants judicial notice of the

1   existence of those documents.

2

3      **3.2    Rule 12(b)(1)**

4

5      Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of

6   subject matter jurisdiction.  Because federal courts are courts of limited jurisdiction, it is

7   "presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

8   contrary rests upon the party asserting jurisdiction."  *Vacek v. United States Postal Serv.*, 447

9   F.3d 1248, 1250 (9th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

10  375, 377 (1994) (citations omitted)).

11      Plaintiff alleges both federal question jurisdiction and diversity jurisdiction.  (Compl. ¶

12  9.)  Under 28 U.S.C. § 1331, this Court has "original jurisdiction of all civil actions arising under

13  the Constitution, laws, or treaties of the United States."  Plaintiff alleges claims under the

14  Securities Exchange Act, which is a federal statute.  Because Plaintiff has alleged federal claims,

15  this Court has jurisdiction under § 1331.

16      The Court also considers whether Plaintiff has established diversity jurisdiction in the

17  alternative.  Under 28 U.S.C. § 1332(a:)

18           The district courts shall have original jurisdiction of all civil actions where the

19           matter in controversy exceeds the sum or value of $75,000, exclusive of interest

20           and costs, and is between—

21               (1) citizens of different States;

22               (2) citizens of a State and citizens or subjects of a foreign state;

23               (3) citizens of different States and in which citizens or subjects of a foreign

24               state are additional parties; and

25               (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and

26               citizens of a State or of different States.

27      For the purposes of this section, section 1335, and section 1441, an alien admitted

28      to the United States for permanent residence shall be deemed a citizen of the State

1    in which such alien is domiciled.

2        Here, Plaintiff is a Chinese citizen.  In the complaint, Plaintiff alleges that "Yao is a

3    citizen of China and holds a business visa to work temporarily in the United States."

4    (Complaint, ¶ 1.)  Plaintiff does *not* allege that he is a permanent resident of the United States

5    who could thus be considered a citizen of a particular state.  Defendant Crisnic is an entity in

6    Costa Rica, and Defendant Gentile is a United States citizen who is permanently domiciled in

7    Costa Rica.  (Affidavit of Anthony Gentile In Support of Opposition to Motion for Service by

8    Publication, ¶ 5.)  The evidence submitted does not establish that Defendant Gentile would be

9    considered a citizen of a State at this point.  Perplexingly, Plaintiff does not clearly set forth

10   which subpart of § 1332(a) he thinks applies here.  Based on the allegations in the complaint and

11   the evidence submitted, the Court concludes that Plaintiff has not established diversity

12   jurisdiction over this matter.

13       But because the Court has federal question jurisdiction, the Court concludes that

14   Defendants' arguments under Rule 12(b)(1) fail.

15

16   **3.3     Rule 12(b)(2)**

17

18       Defendants also move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

19   Both Defendant Crisnic and Defendant Gentile move to dismiss on this basis.

20

21       *3.3.1   Legal Standard*

22

23       Under Federal Rule of Civil Procedure 12(b)(2), a defendant may bring a motion to

24   dismiss for lack of personal jurisdiction.  Although the defendant is the moving party, the

25   plaintiff bears the burden of establishing personal jurisdiction.  *Rio Properties, Inc. v. Rio Int'l*

26   *Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  When a court decides a motion to dismiss for

27   lack of personal jurisdiction before conducting a trial or evidentiary hearing, the plaintiff need

28   only make a prima facie showing that personal jurisdiction exists.  *Ballard v. Savage*, 65 F.3d

1495, 1498 (9th Cir. 1995). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citations omitted). For a Rule 12(b)(2) motion brought before trial or an evidentiary hearing, a court resolves any "[c]onflicts between parties over statements contained in affidavits" in plaintaiff's favor. *Id.* Otherwise, defendants could prevent plaintiffs from meeting their burden simply by contradicting plaintiffs' affidavits. *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Lawful exercise of jurisdiction over a nonresident defendant must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. Concerns for fairness require that a court exercise jurisdiction only if the defendant's actions in the forum are such that "he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

A plaintiff can establish a defendant's minimum contacts with a given forum under a theory of general or specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). General jurisdiction exists where a defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Id.* at 415. If general jurisdiction exists, the forum state has jurisdiction over the defendant regardless of where the events giving rise to the litigation occurred. *Id.* at 415.

If a defendant's contacts with the forum state are not sufficient to establish general jurisdiction, specific jurisdiction may still be shown. Specific jurisdiction exists where the defendant has purposefully availed himself of "the benefits and protections" of the laws of the forum through specific acts giving rise to the litigation at hand. *See Burger King Corp.*, 471 U.S. at 472-73 (citing *Helicopteros*, 466 U.S. at 414). Once it is established that the defendant purposefully availed himself of the benefits and protections of the forum, or purposefully

1  directed his actions toward the forum, the forum's exercise of jurisdiction is "presumptively

2  reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991).

3

4            3.3.2   *Analysis*

5

6        Plaintiff takes a scattershot approach to trying to establish jurisdiction over Defendants

7  Crisnic and Gentile.  His Opposition to the Motion to Dismiss is filled with convoluted

8  arguments and numerous citations to evidence, some relevant and some perplexing.  Further,

9  Plaintiff's papers are not clear about which arguments apply to Defendant Crisnic, which

10  arguments apply to Defendant Gentile, and which apply to both.  While Plaintiff spends

11  numerous pages cataloguing the contacts between Defendant Gentile and the United States, the

12  discussion of Defendant Crisnic is minimal.

13        First the Court must address what legal standard applies here.  Plaintiff contends that

14  Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa ("Section 27") alters

15  the analysis from the typical situation.  Courts have held that, although Section 27 does not

16  explicitly address personal jurisdiction, it can give rise to personal jurisdiction.  *See Securities*

17  *Investor Protection Corp. v. Vigman*, 764 F.2d 1039 (9th Cir. 1985); *Travis v. Anthes Imperial*

18  *Ltd.*, 473 F.2d 515 (8th Cir. 1973).  Plaintiff argues that, because this case is based on securities

19  fraud, nationwide personal jurisdiction should be found when Defendants have sufficient

20  minimum contacts with the United States as a whole.  It is perplexing that Defendants do not

21  directly address Section 27 in their Motion or Reply.  "[T]he essential issue is whether the

22  defendants' conduct in the United States was of such significance to subject them to the

23  jurisdiction of the District Court."  *Travis*, at 524.  "Thus, whether Section 27 will confer

24  personal jurisdiction over a non-resident defendant depends on whether the defendant has acted

25  within any district of the United States or sufficiently caused foreseeable consequences in this

26  country."  *Vigman*, 764 F.2d at 1316.  "We hold, therefore, that so long as a defendant has

27  minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction

28  over the defendant in any federal district court."  *Id*.

1    While Plaintiff is generally correct that Section 27 provides nationwide personal

2    jurisdiction, the Court must still consider due process and "traditional notions of fair play and

3    substantial justice." *International Shoe*, 326 U.S. at 320.  Even in a Section 27 situation, "th[e]

4    Court must ascertain whether it is reasonable for this Court to exercise its jurisdiction over

5    [defendant]." *MTC Electronic Tech. Co., Ltd. v. Leung*, 889 F. Supp. 396, 400 (C.D. Cal. 1995).

6    *See also Pacific Life Ins. Co. v. Spurgeon*, 319 F. Supp. 2d 1108 (C.D. Cal. 2004) (considering

7    due process in a declaratory relief case where jurisdiction was conferred by Section 27).

8    "[I]t is reasonable to infer that Congress meant to assert personal jurisdiction over

9    foreigners not present in the United States but, of course, not beyond the bound permitted by the

10   due process clause of the Fifth Amendment." *Travis*, 473 F.2d at 529.  For guidance in

11   considering the Fifth Amendment, the Court looks at the *Burger King* factors, which are "the

12   burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's

13   interest in obtaining convenient and effective relief, the interstate judicial system's interest in

14   obtaining the most efficient resolution of controversies, and the shared interest of the several

15   States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477

16   (internal quotations omitted).

17   Defendants argue that the dispute centers on an international agreement "between Crisnic,

18   a Costa Rican entity doing business in Costa Rica, and Yao, a Chinese national and resident,

19   domiciled in China . . . [and] the contract and transaction between Crisnic and Yao occurred

20   outside the borders of the United States."  (Reply to Motion to Dismiss, at 23:8-9, 15-16.)  It

21   does not appear that Defendant Gentile was in the United States when the transaction took place

22   with Plaintiff.  But this dramatically understates the connections between Defendants the United

23   States, and between the transaction and the United States.

24   For Defendant Crisnic, the evidence shows that it comports with due process for Crisnic

25   to be sued in the United States.  For example, the Structured Transaction between Defendant

26   Crisnic and Plaintiff involved shares of a corporation registered in Nevada, and the Structured

27   Transaction Agreement specified Georgia law as the controlling law.  (Declaration of Stanley

28   Morris In Support of Opposition to the Motion to Dismiss, Ex. 5.)  Further, Defendant Crisnic

1    worked with Furman, who lives in New Jersey, in completing the transaction with Plaintiff.

2    Under Section 27, the relevant analysis is whether the United States as a whole is a proper

3    forum, not just a particular state.  *Vigman*, 764 F.2d at 1316.  Defendant Crisnic has sufficient

4    ties to the United States that it could anticipate the chance of litigation in the United States.

5         For Defendant Gentile as well, the evidence also shows that it would comport would due

6    process for him to be sued in the United States.  The showing is stronger for Defendant Gentile.

7    First, he is a United States citizen and carries a Georgia driver's license.  He also has a mortgage

8    on a home in Georgia, which is currently occupied by his estranged spouse.  And the evidence

9    makes at least a prima facie showing that he still conducts at least some routine business through

10   IFG, which is incorporated in Georgia and has an office in California.  Thus, Defendant Gentile

11   has sufficient contacts with the United States as a whole that personal jurisdiction is appropriate.

12        Thus, the Court concludes that, because of Section 27, Defendants' Rule 12(b)(2)

13   arguments fail.

14

15   **3.4    Rule 12(b)(6)**

16

17        Defendants' final argument in the Motion to Dismiss is that the complaint fails to state a

18   claim under Rule 12(b)(6).

19

20        *3.4.1   Legal Standard*

21

22        A court should dismiss a complaint when its allegations fail to state a claim upon which

23   relief can be granted.  FED. R. CIV. P. 12(b)(6).  A complaint need only include "a short and

24   plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P.

25   8(a)(2).  "'[D]etailed factual allegations' are not required."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

26   1940 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (stating that "a

27   complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

28   allegations")).  The Court must accept as true all factual allegations in the complaint and must

1  draw all reasonable inferences from those allegations, construing the complaint in the light most

2  favorable to the plaintiff.  *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010).

3       But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim

4  to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at

5  570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw

6  the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.

7  Ct at 1940 (citing *Twombly*, 550 U.S. at 556).  A court should not accept "threadbare recitals of a

8  cause of action's elements, supported by mere conclusory statements," *id.*, or "allegations that

9  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Sprewell v.*

10 *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The Ninth Circuit recently addressed

11 post-*Iqbal* pleading standards in *Starr v. Baca*, — F.3d —, 2011 WL 2988827, at *14 (9th Cir.

12 July 25, 2011).  The *Starr* court stated, "First, to be entitled to the presumption of truth,

13 allegations in a complaint or counterclaim may not simply recite the elements of a cause of

14 action, but must contain sufficient allegations of underlying facts to give fair notice and to

15 enable the opposing party to defend itself effectively.  Second, the factual allegations that are

16 taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require

17 the opposing party to be subjected to the expense of discovery and continued litigation."  "A

18 district court may deny a plaintiff leave to amend if it determines that allegation of other facts

19 consistent with the challenged pleading could not possibly cure the deficiency . . . or if the

20 plaintiff had several opportunities to amend its complaint and repeatedly failed to cure

21 deficiencies."  *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010); see also

22 *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

23      To comply with Fed. R. Civ. P. 9(b) in a fraud case, a plaintiff must plead "with

24 particularity" the time and place of the fraud, the statements made and by whom made, an

25 explanation of why or how such statements were false or misleading when made, and the role of

26 each defendant in the alleged fraud. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 &

27 n.7 (9th Cir. 1994) (en banc) (reversed concerning securities fraud claims); *Lancaster*

28 *Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 405 (9th Cir. 1991); *see*

1   *also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (holding that Rule 9(b)

2   requires a plaintiff to "state the time, place, and specific content of the false representations as

3   well as the identities of the parties to the misrepresentation").

4       The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4

5   (1995), amended the Securities Exchange Act of 1934 by raising the pleading standard in private

6   securities fraud litigation cases beyond Rule 9(b) requirements.  A complaint alleging securities

7   fraud must "specify each statement alleged to have been misleading, the reason or reasons why

8   the statement is misleading, and, if an allegation regarding the statement or omission is made on

9   information and belief, the complaint shall state with particularity all the facts on which that

10  belief is formed."  15 U.S.C. § 78u-4(b)(1).  To sufficiently allege scienter, the complaint must

11  "state with particularity facts giving rise to a strong inference that the defendant acted with the

12  requisite state of mind."  15 U.S.C. § 78u-4(b)(2).  That is, that "he acted with intentionality or

13  deliberate recklessness."  *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).  If the complaint

14  fails to sufficiently plead falsity and scienter, dismissal is required.  15 U.S.C. § 78u-4(b)(3)(A).

15

16      *3.4.2   Analysis*

17

18      The core of Plaintiff's complaint is that he was duped into the whole stock transaction by

19  Defendants.  Plaintiff's three federal claims, for violation of the securities laws, rely on these

20  supposed misrepresentations.

21      There are two categories of misrepresentations that Plaintiff alleges, neither with

22  sufficient specificity.  First, Plaintiff alleges that he was misinformed about whether it was legal

23  to transform his China Armco shares into unrestricted stock.  But Plaintiff fails to allege that

24  either Defendant Crisnic or Defendant Gentile ever made such a misrepresentation to him.

25  Instead, the only specific misrepresentation of this type that Plaintiff alleges is from Sunny

26  Barkats.  Plaintiff alleges that Sunny Barkats drafted "a legal opinion that Yao's 1.3 million

27  restricted, unsellable, China Armco shares could be transformed into unrestricted, sellable,

28  shares." (Complaint, ¶ 14.)  Regarding Defendants, Plaintiff alleges that "[u]pon information

1    and belief, Gentile, through his highly compensated agent, Furman, directed Yao to follow

2    specific instructions.  Yao followed those instructions and, as a direct and proximate result of

3    doing so, Yao lost almost $5 million, all of his pledged securities to Crisnic." (Id., ¶ 54.)

4    Further, Plaintiff conclusorily alleges that "[a]s a direct and proximate result of defendants'

5    failure to disclose all known material facts related to such transaction, Yao was damaged,

6    including, without limitation, that in reliance on such misrepresentations, Yao transferred the his

7    [sic] China Armco stock into the name of Crisnic which then converted such shares to its own

8    personal use." (Id., ¶ 55.)  The allegations about the misrepresentations regarding the

9    transferability of the shares are insufficient as to Defendant Crisnic and Defendant Gentile.

10   Under the PSLRA, the pleading standard is even higher than that of Rule 9(b), which already

11   requires more specificity than Rule 8(a).  Plaintiff has failed to meet the requisite pleading

12   standard.

13        Plaintiff also alleges another misrepresentation: that Defendants Crisnic and Gentile

14   secretly intended to sell the shares immediately upon receipt from Plaintiff but falsely promised

15   Plaintiff the shares would be held as collateral.  (*Id.*, ¶ 59.)  Because Plaintiff pleads an omission

16   rather than a misrepresentation, the heightened pleading requirements do not entirely apply.  But

17   there is a different problem with this assertion.  The Structured Transaction Agreement states

18   that Defendant Crisnic had the unequivocal right to sell the collateral.  Specifically, the

19   Agreement states: "Upon transferring the Pledged Collateral to the designated account of the

20   Fund as Collateral for the Transaction, the *Borrower hereby grants the Fund the absolute right*

21   to pledge, transfer, assign, hypothecate, lend, encumber, sell short, *or sell outright* Pledged

22   Collateral, as needed to procure a Transaction or hedge against adverse market movements."

23   (Declaration of Stanley Morris in Support of Opposition to Motion to Dismiss, Ex. 5, Sec. 4(a)

24   (emphasis added).)  There can be no claim that Defendants fraudulently omitted informing

25   Plaintiff of their intent to sell when the Structured Transaction Agreement explicitly grants them

26   that right.  Such a claim is not plausible.

27        Thus, Plaintiff's First, Second, and Third Claims, for violation of the securities laws, all

28

of which rely on these allegations of misrepresentation, fail.  Because those claims fail, and the Court only has federal question jurisdiction, the Court does not consider the viability of Plaintiff's remaining pendant state law claims.

### 3.4.3   Conclusion

The Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment.  *Telesaurus*, 623 F.3d at 1003.  Under the PSLRA, Plaintiff faces a high pleading standard.  Plaintiff has alleged no facts to suggest that the first type of misrepresentation – that the shares could be freely transferred – was ever made by Defendant Crisnic or Defendant Gentile and then relied upon by Plaintiff.  The Court is not convinced that Plaintiff could sufficiently allege such a misrepresentation by Defendants even if leave to amend were granted.  The allegations show that Plaintiff received that misrepresentation from Barkats. Further, Plaintiff's second alleged category of misrepresentation – that Defendants would not immediately sell the shares – is belied by the contents of the Structured Transaction Agreement. Any claim for breach of oral agreement would be a state law contract claim, over which this Court lacks jurisdiction.

## 4.   CONCLUSION

The Court GRANTS the Motion to Dismiss.  Defendants' arguments fail under Rule 12(b)(1) and Rule 12(b)(2), but succeed under Rule 12(b)(6).  This Court only has federal question jurisdiction, but the Court grants leave to amend Plaintiff's federal claims.

1

**DISPOSITION**

2

3

4

      The Court DENIES the Motion to Quash.  The Court declines to order service under Rule 4(f)(3).  The Court DENIES the Motion for Service by Publication.  The Court GRANTS the Motion to Dismiss with leave to amend.  Plaintiff may submit an amended complaint within 14 days of this Order.

5

6

7

8

9

10

IT IS SO ORDERED.

11

DATED: August 29, 2011

12

13

14

_____

15

Andrew J. Guilford

16

United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28